O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-4241 ODW (MANx) | Date | December 1, 2010 |
|---|---|---|---|
| Title | *Ohio National Life Assurance Corporation v. Douglas W. Davis, et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | | |
|---|---|---|---|
| | Raymond Neal | Not Present | n/a |
| | Deputy Clerk | Court Reporter | Tape No. |
| | Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): | |
| | Not Present | Not Present | |

**Proceedings (In Chambers):** Order GRANTING Plaintiff's Application for Preliminary Injunction [49]

Currently before the Court is Plaintiff, Ohio National Life Assurance Corporation's ("Plaintiff" or "Ohio National"), Motion for Preliminary Injunction. (Dkt. No. 49.) Having considered the matter, the Court **GRANTS** Ohio National's Motion.

## I.   BACKGROUND

Ohio National alleges the following:

Defendants, Douglas W. Davis ("Davis") and Movash Morady ("Morady" and collectively, "Defendants"), procured from Ohio National, two life insurance policies (the "Policies") insuring the life of California senior citizens, Joseph Griffin ("Griffin") and Wayne Smith ("Smith," collectively, the "Insureds"). (Compl. ¶ 8.) The Policies provide for a death benefit payment of one million dollars respectively. (*Id.*, 11.)

In 2007, Davis, an attorney residing in California, solicited and induced Griffin and Smith to sign two insurance applications applying for life insurance policies from Ohio National. (*Id.*, ¶ 9.) They were also induced to sign two irrevocable trusts (the "Griffin Irrevocable Life Insurance Trust" and the "Smith Irrevocable Trust;" collectively, the "Trusts") documents that named Davis as the trustee, the Trusts as the owners, and the insureds' wives as the beneficiaries of the Policies. (*Id.*, ¶¶ 9, 20, 37.) At least one of the Trusts authorizes Davis to:

> [E]xercise his sole and absolute discretion . . . to borrow money for the purchase of one or more insurance policies on [the Insured's] life and to provide security therefore, including an assignment of an interest in any such policy and/or proceeds of any such policy to any lender . . . .

(*Id.*, ¶ 22.) Davis is not a licensed insurance agent nor is he authorized to market or sell Ohio National life insurance policies. (*Id.*, ¶ 9.) Defendant, Christiana Bank & Trust Company,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4241 ODW (MANx) | Date | December 1, 2010 |
|---|---|---|---|
| Title | *Ohio National Life Assurance Corporation v. Douglas W. Davis, et al.* | | |

("Christiana Bank") is the, current, successor trustee to the Griffin Irrevocable Life Insurance Trust. (Compl. ¶ 4.)

Morady is an independent insurance broker. (*Id.*, ¶ 10.) Morady signed the insurance applications and misrepresented that the proposed Insureds were "well-known" to her, that she personally saw the proposed Insureds and examined their financial records, and that each proposed insured had a net worth of approximately one million dollars or greater. (*Id.*) Morady received commissions from Ohio National for the eventual sale of the Policies. (*Id.*)

The Defendants' insurance scheme is commonly referred to as stranger originated life insurance ("STOLI") transactions. Recently, a secondary market has emerged in which speculative investors seek to obtain a pecuniary interest in life insurance policies on individuals whom the investors have no relationship. As such, STOLI transactions have become prevalent where investors gravitate toward procuring policies that insure senior citizens who apparently have higher market value. STOLI investors attempt to conceal their actions by setting up trust or shell entities as the owners and beneficiaries of the policies. As here, investors pay the premiums for the policies, and promise to pay the insureds to participate in the STOLI scheme. (Mot. 2-3.)

Based on the foregoing, Ohio National filed this lawsuit seeking a Declaratory Judgment that Davis, Morady, and the Trusts do not have insurable interests in the lives of the Insureds, and an order declaring the Policies void *ab initio*. In addition, the Complaint alleges the following claims: (1) Fraud; (2) Violations under California's Unfair Business Practices Act, Bus. & Prof. Code §17200, *et seq.*; (3) Unjust Enrichment; and (4) Civil Conspiracy. Lastly, Ohio National seeks damages, including punitive damages.

## II.  DISCUSSION

Ohio National seeks for an Order enjoining Policy changes and allowing deposit of premiums with the Court pending resolution of this case. The Motion is unopposed.

To obtain a preliminary injunction, the movant must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. NRDC, Inc.*, --- U.S. ----, 129 S. Ct. 365, 374 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

### A.  Likelihood of Success on the Merits

The gravamen of Ohio National's claims against Defendants articulates a fraudulent scheme to procure life insurance policies to which no insurable interests existed at the time of the Policies' inception. Accordingly, all claims relate to whether Defendants fraudulently misrepresented an

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4241 ODW (MANx) | Date | December 1, 2010 |
|---|---|---|---|
| Title | *Ohio National Life Assurance Corporation v. Douglas W. Davis, et al.* | | |

actual lack of insurable interests. Therefore, the likelihood of success on the merits turns on whether the Policies were void *ab initio* for lack of insurable interests.

In California, no life insurance contract is valid unless the insured has an "insurable interest." Cal. Ins. Code § 280. An insurable interest is defined as "an interest based upon a reasonable expectation of pecuniary advantage through the continued life, health, or bodily safety of another person and consequent loss by reason of that person's death or disability or a substantial interest engendered by love and affection in the case of individuals closely related by blood or law." Cal. Ins. Code § 10110.1(a). As the United States Supreme Court has explained, "there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured." *Warnock v. Davis*, 104 U.S. 775, 779 (1881). Without such expectation of benefit, "the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy." *Id.*

In addition, "an interest in the life or health of a person insured must exist *when the insurance takes effect*, but need not exist thereafter or when the loss occurs." *See* Cal. Ins. Code § 286 (emphasis added); *see also Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 493 (9th Cir. 1997) ("[W]here incontestability clause is in place and incontestability period has run, insurance policy may be challenged only on ground that it is void *ab initio* for lack of insurable interest.").

In this case, Ohio National contends that Defendants do not have insurable interests in the Policies. (Mot. 4.) The issue, however, is not whether the Defendants had insurable interests in the Policies, but whether the Trusts that procured the Policies had insurable interests in the Insureds. With respect to the two life insurance policies at issue in this case, the beneficiaries of the Trusts were the Insureds' wives. (Compl. ¶¶ 20, 37.) As such, the Trusts used to apply for the Policies presumably had insurable interests in the lives of the Insureds. *See* Cal. Ins. Code § 10110.1(a). In California, however, "[a]ny device, scheme, or artifice designed to give the appearance of any insurable interest where there is no legitimate insurable interest violates the insurable interest laws." Cal. Ins. Code § 10110.1(e). Specifically, any arrangement by which a life insurance policy is initiated for the benefit of a "third party investor" who has no insurable interest in the insured's life at the time the policy is issued is deemed a STOLI, which is a prohibited "fraudulent life settlement act." Cal. Ins. Code §§ 10113.1(w), 10113.2, 10113.3(s). Ohio National presents allegations that strongly support inferences that the Policies were indeed STOLIs.

To begin, Ohio National alleges that Davis solicited and induced Griffin and Smith to apply for life insurance policies promising no premium payment obligations yet receiving payments for their participation. In the process, Griffin and Smith were convinced to sign irrevocable trusts naming Davis as the trustee and the Trusts as owners of the Policies. Morady seemingly rubber stamped the life insurance applications without ever seeing the proposed Insureds or examining their financial records. In addition, Davis, as trustee, was given unfettered discretion to purchase life insurance policies and to borrow money for the same. Further, Davis was given the power to assign

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-4241 ODW (MANx) | Date | December 1, 2010 |
|---|---|---|---|
| Title | *Ohio National Life Assurance Corporation v. Douglas W. Davis, et al.* | | |

the Policies and the proceeds of the Policies to any lender. Accordingly, it seems highly likely that Ohio National would succeed in establishing that the procurement of the Policies were STOLI transactions. Specifically, Ohio National has demonstrated that Davis and Morady did not have insurable interests in the lives of the Insureds yet the Policies were initiated for their benefit. Therefore, based on the unopposed papers and other submissions, Ohio National has established a likelihood of success on the merits.

### B. Likelihood of Irreparable Harm

The frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 129 S. Ct. at 375-76 ("a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury") (citations and quotations omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Ohio National contends that "there is a strong likelihood of irreparable harm if the requested relief is not granted." (Mot. 6.) Particularly, Ohio National avers that "[i]f the Policies are sold to stranger investors, and the [I]nsureds die, Ohio National would be subject to claims for benefits under the [P]olicies from the stranger investors." (*Id.*) Nevertheless, at this time, Ohio National would be subject to the claims under the Policies *whether or not* the Policies are sold to stranger investors. In addition, the death of the insured, a condition precedent required in this case, is too speculative at this point. Until this event occurs, Ohio National will not incur a "harm" and will continue receiving premium payments under the Policies. Regardless, it is likely that calculating damages based on the speculative nature of a person's death will be difficult to ascertain. *See In re Estate of Ferdinand Marcus*, 25 F.3d 1467, 1479 (9th Cir. 1994). Therefore, on balance, Plaintiff has demonstrated a likelihood of irreparable harm necessary to warrant a preliminary injunction.

### C. Balance of Equities and Public Interest

The Court also notes that the balance of equities and public interest elements both demonstrate that a preliminary injunction would be proper. Ohio National alleges a fraudulent scheme where highly vulnerable citizens are taken advantage by those who hide behind the guise of being a professional. Also, it seems likely that the Policies were applied with a "a colorable or merely temporary interest [ ] from which want of good faith and an intent to evade the rule might be inferred." *In re Al Zuni Trading*, 947, F.2d 1403, 1405 (9th Cir. 1991) (quoting *Connecticut Mut. Life Ins. v. Schaefer*, 94 U.S. 457, 461 (1876)). The recently amended Insurance Codes that expressly prohibit STOLI transactions and other similar arrangements demonstrate the interests and the increasing concerns that California and its people have regarding this matter. *See generally* Cal. Ins. Code § 10113. In addition, the secondary market to which policy holders seek to sell life insurance policies, understandably, is a thriving one. A temporary restriction of Defendants from selling this policy will only nominally affect its prospects to sell at

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-4241 ODW (MANx) | Date | December 1, 2010 |
|---|---|---|---|
| Title | *Ohio National Life Assurance Corporation v. Douglas W. Davis, et al.* | | |

a later date. Furthermore, given the unopposed nature of this Motion to preserve the status quo, the Court finds that the balance of hardships and the public interest tips in favor of Ohio National.

## III. CONCLUSION

In sum, Ohio National has established the elements necessary for a preliminary injunction. Therefore, the Court **GRANTS** Ohio National's Motion. Accordingly, the Court orders the following:

(1) Prohibiting the sale or transfer of any interest in the Policies, directly or indirectly, including prohibiting use of the Policies as collateral loans;

(2) Prohibiting the assignment or change of Trustee for the Trusts which currently own and/or are beneficiaries of the Policies;

(3) Prohibiting the change of beneficiary of, or sale or transfer of any interest in, the Policies and the Trusts which currently own and/or are beneficiaries of the Policies; and

(4) Granting Ohio National leave to deposit with the Clerk of the Court, to hold in escrow, any premium payments received or to be received by Ohio National for the Polices, without prejudice to Ohio National's claims including its claim that the Policies are void.

IT IS SO ORDERED.

---- : 00

Initials of Preparer    RGN